# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| MICHELLE L. VIEIRA, *as Ch. 7 bankruptcy trustee for debtors Ken C. Goss and Gretchen G. Goss*, ) ) ) ) Plaintiff, ) ) v. ) ) MARK SIMPSON, CHRISTY A. SIMPSON, SIMPSON FAMILY HOLDINGS INC., AARON L. SILVERMAN, and JONES SIMPSON & NEWTON PA, ) ) ) ) ) ) ) Defendants. ) ) | No. 2:13-cv-2610-DCN  **ORDER** |

This matter is before the court on a motion to alter or amend judgment filed by plaintiff Michelle L. Vieira, as bankruptcy trustee for debtors Ken and Gretchen Goss ("Vieira"). Vieira seeks reconsideration of the court's March 28, 2016 order ("March 2016 Order") in which the court reconsidered its July 23, 2015 order ("July 2015 Order")[1] and granted defendants Mark Simpson ("Mark") and Jones, Simpson & Newton, P.A.'s ("JS&N," together with Mark, the "JS&N defendants") motion for summary judgment as to Vieira's claims for legal malpractice and equitable subordination. For the

---

[1] The July 2015 Order was itself a reconsideration of the court's original ruling on defendants' motion for summary judgment on March 23, 2015 ("SJ Order"). Thus, issues relating to defendants' motion for summary judgment have been the subject of three prior orders: (i) the SJ Order granting summary judgment; (ii) the July 2015 Order reconsidering the SJ Order and denying summary judgment with respect to Vieira's claim for legal malpractice against the JS&N defendants and holding Vieira's claim for equitable subordination against the JS&N defendants in abeyance, and (iii) the March 2016 Order reconsidering the July 2015 Order and granting—for the second time—the JS&N defendants' motion for summary judgment as to Vieira's claims for legal malpractice and equitable subordination.

1

following reasons, the court refers the instant motion and the remainder of this action to the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court").

## I.  BACKGROUND[2]

This case arises out of a loan transaction between Ken and Gretchen Goss ("Ken" and "Gretchen," together "the Gosses") and Simpson Family Holdings, Inc. ("SFH").  In June 2007, Ken, a residential home builder, contacted Mark, an attorney who had performed a number of real estate closings for Ken in the past, to ask whether Mark knew of any investors willing to make a loan that would allow the Gosses to finish a remodeling project on Hilton Head Island, South Carolina.  Sometime later, Mark informed Ken that he had found an investor willing to make such a loan.  Mark instructed the Gosses to meet with him and the lender at the law offices of JS&N, where Mark is a partner.  Once they arrived at JS&N's offices, the Gosses learned that the prospective lender was SFH, a corporation owned by Mark's wife, defendant Christy Simpson ("Christy").[3]  Mark was SFH's vice president, though he did not disclose this fact at the time and did not advise the Gosses to seek independent legal counsel.

The terms of the loan were set out in a note which the Gosses signed on June 29, 2007 (the "Note").  ECF No. 62-2.[4]  The Gosses consented to JS&N representing both parties to the transaction.  ECF No. 62-10.  The Note was modified either four or five

---

[2] Unless otherwise specified, the following facts are taken from this court's March 2016 Order, July 2015 Order, and SJ Order.

[3] Mark claims that Christy inherited SFH from her father and that he had no ownership interest in the company.  ECF No. 62-7, Mark Simpson Dep. 17:24-20:17.

[4] Given the substantial amount of briefing implicated by the instant motion, the court has cited to materials in the record by ECF number, except for the parties' briefs on the instant motion.

times between June 29, 2007 and August 25, 2009.[5] ECF Nos. 62-13–62-15; ECF No. 72-9 at 5. Each modification extended the maturity date of the loan and adjusted the premium due at maturity. ECF Nos. 62-13–62-15; ECF No. 72-9 at 5. Mark signed the modifications as vice president of SFH. ECF Nos. 62-13–62-15; ECF No. 72-9 at 5.

On August 3, 2009, SFH sued the Gosses in the South Carolina Court of Common Pleas for nonpayment of the Note. ECF No. 62-16. The case settled, resulting in the final modification of the Note, which extended the maturity date to August 30, 2010. ECF No. 62-1 at 4; see also ECF No. 62-17, Final Modification. In connection with this final modification, the Gosses signed a document titled "Collateral Assignment of Limited Partnership Interest" (the "GFLP Assignment"), which assigned the Gosses' right to receive payments from their interest in the Goss Family Limited Partnership ("GFLP") to SFH in the event the Gosses defaulted on the loan. ECF No. 62-18. After a series of subsequent assignments, the parties eventually held the following relative interests in the note, mortgage, and the GFLP Assignment: defendant Aaron L. Silverman ("Silverman") held 36.01%, SFH held 30.86%, Mark and Christy held 18.52%, PENSCO A held 7.41%, and PENSCO B[6] held 7.20%.[7] ECF No. 72 at 3.

On January 25, 2012, the Gosses filed for Chapter 7 bankruptcy. On April 22, 2013, Vieira filed this action in the bankruptcy court alleging the following causes of action: fraud, negligence, and breach of fiduciary duty against Mark; malpractice against Mark and JS&N; breach of fiduciary duty against JS&N; violation of the Fair Debt Collection Practices Act ("FDCPA") against SFH, Mark, and Christy; and civil

---

[5] The exact number of modifications is not essential to the court's analysis.

[6] PENSCO A and PENSCO B refer to assignments to PENSCO Trust Company for the benefit of Mark and Christy's respective IRAs.

[7] The accuracy of these percentages is not essential to the court's analysis.

3

conspiracy/joint enterprise, disgorgement of ill-gotten gain, and equitable subordination against all defendants. ECF No. 1-1, Compl. ¶¶ 64–119. On September 6, 2013, Mark and JS&N moved for an order withdrawing reference of this proceeding from the Bankruptcy Court. ECF No. 1. The matter was transferred to this court on September 25, 2013. On July 24, 2014, the JS&N defendants moved for summary judgment. ECF No. 62. The court granted the JS&N defendants' motion for summary judgment on March 23, 2015,[8] ECF No. 102, but on July 23, 2015, the court reconsidered its decision and denied summary judgment to the extent Vieira alleged that the JS&N defendants committed legal malpractice with respect to the GFLP Assignment. ECF No. 116. The July 2015 Order also held Viera's equitable subordination claim against the JS&N Defendants in abeyance. Id. at 4. On March 28, 2016, the court reconsidered its July 2015 Order and once again granted the JS&N defendants' motion for summary judgment on all claims. ECF No. 123. The court reasoned that, even if the JS&N defendants breached a duty owed to the Gosses, there was no evidence that this breach caused the Gosses any damages. Id. at 4–7.

Vieira filed the instant motion on April 25, 2016, arguing that the court's most recent order—the March 2016 Order—incorrectly granted the JS&N defendants summary judgment on Vieira's equitable subordination claim. The JS&N defendants filed a response on May 12, 2016. The court held a hearing on July 15, 2016. The matter is now ripe for the court's review.

---

[8] The SJ Order also granted motions for summary judgment by Christy, SFH, and Silverman.

## II.  DISCUSSION

Though the court could address the merits of the underlying motion for summary judgment for a fourth time—or emphasize the impropriety of raising new arguments on a Rule 59(e) motion—it strikes the court that the only remaining issues in this action pertain to a claim that arises under 11 U.S.C. § 510(c) of the Bankruptcy Code.  The original reasons for withdrawing this action's reference to the Bankruptcy Court no longer apply.  In these circumstances, the court finds it appropriate to exercise its discretion to refer this matter back to the Bankruptcy Court.

Pursuant to 28 U.S.C. § 157(a), district courts are authorized "to refer bankruptcy matters at their discretion to bankruptcy courts."  In re Grewe, 4 F.3d 299, 304 (4th Cir. 1993).  This grant of authority extends to "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11."  28 U.S.C. § 157(a).  Though courts rarely provide any analysis when exercising their authority under § 157(a),[9] this court's decision is guided by decisions in this circuit referring cases to the Bankruptcy Court in the first instance.

In Vieira v. AGM, II, LLC, another court in this district addressed a motion to refer a bankruptcy trustee's action against a creditor to the Bankruptcy Court.  363 B.R. 746 (D.S.C. 2007).  The trustee alleged that the defendant had effectively inserted certain individuals into the debtor's business who made decisions that benefited the creditor and harmed the debtor.  Id. at 749.  The debtor was forced into bankruptcy under Chapter 7 of the Bankruptcy Code, and the trustee brought claims for breach of fiduciary duty to

---

[9] Many district courts, including this one, have exercised their authority under § 157(a) by imposing standing orders referring all applicable matters to the bankruptcy courts.  See, e.g., Local Civ. R. 83.IX.01.  Thus, most matters are referred to the bankruptcy courts without any analysis.

creditors, breach of fiduciary duty to the debtor, constructive trust, and accounting in the district court. Id.

The AGM, II court applied the framework originally set forth in Travelers Ins. Co. v. Goldberg, 135 B.R. 788 (D. Md. 1992), which provides as follows:

> In deciding whether to refer this case, the Court must first determine (1) whether this action is sufficiently "related to" the bankruptcy cases to permit a referral under § 157(a), and (2) whether and to what extent a referral is permissible at all in light of the plaintiffs' jury demand. If, after these issues are resolved, the Court finds that it has the discretion to grant defendants' motion [to refer the case], it must still decide whether a referral would be of practical benefit to the administration of the action.

AGM, II, LLC, 363 B.R. at 749 (alterations in original) (quoting Travelers Insurance Co., 135 B.R. at 790).

### A.     "Related to" Requirement of § 157(a)

As noted above, § 157(a) provides the district courts with authority to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for the district. 28 U.S.C. § 157(a). An action is

> related to a case in bankruptcy if the outcome in the civil case "could conceivably have any effect on the estate being administered in bankruptcy . . . if the out-come would alter the debtor's rights, liabilities, options, or freedom of action (positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

New Horizon of NY LLC v. Jacobs, 231 F.3d 143, 151 (4th Cir. 2000) (alterations in original) (quoting Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995)).

The instant action unquestionably meets this requirement. Viera's equitable subordination claim directly affects the priority of the creditors' claims, and therefore, directly affects the administration of the Gosses' estate. See ECF No. 1-1, Compl. ¶ 118 (asking court to "subordinate the purported claims of any of the named [d]efendants to all

other creditors in the estate" and "transfer any lien acquired by any defendant to the estate for the benefit of all creditors"). This is sufficient to satisfy the first prong of the Travelers Insurance test. See AGM, II, LLC, 363 B.R. at 750 (noting that "related to" jurisdiction is interpreted broadly and finding that trustee's claims against creditor satisfied the "related to" test because "[a]t the minimum, [such claims] could alter the ultimate distribution of property among creditors"). Moreover, to the extent this prong of the test simply reflects the statutory requirements of § 157(a), the court notes that § 157(a) also provides authority to refer actions that "aris[e] under title 11[,] or aris[e] in . . . a case under title 11." Thus, there are multiple ways an action or proceeding might fall within the scope of § 157(a). An action "arises under" chapter 11 when the complaint establishes "either that federal [bankruptcy] law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [bankruptcy] law." In re Poplar Run Five Ltd. P'ship, 192 B.R. 848, 855 (Bankr. E.D. Va. 1995) (alterations in original) (Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27–28 (1983)).

An equitable subordination claim is clearly governed by 11 U.S.C. § 510(c). See In re Se. Materials, Inc., 467 B.R. 337, 361 (Bankr. M.D.N.C. 2012) (finding that a claim for equitable subordination "stems from Section 510(c) of the Bankruptcy Code."). Viera even invokes that provision in her complaint. Compl. ¶ 118 (seeking equitable subordination "pursuant to 11 U.S.C. § 510(c)"). Thus, Viera's equitable subordination claim does not simply "relate[] to a case under title 11"; it also "aris[es] under title 11."

Therefore, the court finds that this action satisfies the first prong of the Travelers Insurance test.

7

**B.     Jury Demand**

The court next examines "whether and to what extent a referral is permissible at all in light of the [defendants'] jury demand." AGM, II, LLC, 363 B.R. at 749 (quoting Travelers Insurance Co., 135 B.R. at 790). Section 157(e) of the Bankruptcy Code provides that

> [i]f the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and <u>with the express consent of all the parties</u>.

28 U.S.C. § 157(e) (emphasis added).

The JS&N Defendants have demanded a jury trial in this action, but recognize that they have no right to a jury trial on the equitable subordination claim. See ECF No. 1-20, Jury Demand ¶ 2 (stating that "[t]he Complaint involves one core and eight non-core claims. The Defendants have a right to a trial by jury on the eight non-core claims.").[10] Given that the equitable subordination claim is the only remaining claim in this action, it appears undisputed that the JS&N Defendants' jury trial demand is now moot.

However, to the extent there is any dispute on this issue, the court briefly addresses the JS&N Defendants' right to a jury under the Seventh Amendment.[11] The Supreme Court has consistently interpreted the Seventh Amendment right to a jury trial to extend to "suits in which <u>legal</u> rights were to be ascertained and determined, in

---

[10] To the extent the JS&N Defendants were unclear about which of Viera's original nine claims they regarded as a core claim in their jury demand, they explicitly recognized that the equitable subordination claim is a core proceeding in their motion to withdraw reference of this action to the Bankruptcy Court. ECF No. 1 at 8–10.

[11] The JS&N Defendants do not appear to rest their jury demand on any authority other than the Seventh Amendment. See ECF No. 1 at 12 (discussing Seventh Amendment right to a jury trial).

contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989) (emphasis in original) (quoting Parsons v. Bedford, 7 L.Ed. 732 (1830)).

As the name would suggest, equitable subordination is an equitable doctrine. See United States v. Noland, 517 U.S. 535, 538–41 (1996) (discussing § 510(c)'s origins in the "judge-made doctrine of equitable subordination"). Even if equitable subordination could somehow be construed as a legal claim, it is well established that when a creditor files a proof of claim against the bankruptcy estate—as the JS&N Defendants have done here—"[the] creditor 'triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power." In re Stansbury Poplar Place, Inc., 13 F.3d 122, 125 (4th Cir. 1993) (quoting Langenkamp v. Culp, 498 U.S. 42, 44 (1990)). Consequently, when the trustee then files an action against the creditor that "becomes part of the claims-allowance process, 'integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction,'" the creditor has no right to a jury trial. Id. at 126 (quoting Langenkamp, 498 U.S. at 44). Viera's equitable subordination claim is quite clearly integral to the restructuring of the debtor-creditor relationship because it will affect the priority of the JS&N Defendants' claims.

Therefore, the court finds that the JS&N Defendants' do not have a right to a jury trial on the remaining claim in this action, and § 157(e) does not prohibit the Bankruptcy Court from trying this action.

### C.     Stern v. Marshall Considerations

Before addressing the final prong of the Travelers Insurance framework, the court pauses to observe that Travelers Insurance and AGM, II were both decided before the Supreme Court's landscape altering decision in Stern v. Marshall, 564 U.S. 462 (2011). The court finds it appropriate to address that case and its effect on this action.

In Stern, the Court found that while 28 U.S.C. § 157(b) authorizes bankruptcy courts to enter final judgments in "core"—as opposed to "non-core"—proceedings, Article III places constitutional limits on the bankruptcy courts' authority to enter final orders in certain proceedings that qualify as "core" under § 157(b). Id. at 482, 487. Courts apply a two-prong test to determine whether a bankruptcy court may constitutionally resolve a claim in accordance with Stern. See Dang v. Bank of Am. N.A., 2013 WL 1683820, at *11 (D. Md. Apr. 17, 2013), aff'd sub nom. 544 F. App'x 194 (4th Cir. 2013), and aff'd sub nom. 544 F. App'x 205 (4th Cir. 2013) (recognizing and applying two-prong test); In re Se. Materials, Inc., 467 B.R. 337, 348 (Bankr. M.D.N.C. 2012) (same); In re TP, Inc., 479 B.R. 373, 384 (Bankr. E.D.N.C. 2012) (same).

The test asks (1) "whether the action at issue stems from the bankruptcy itself" or (2) if the action "would necessarily be resolved in the claims allowance process." Stern, 564 U.S. at 499. "If either prong of the test is met, then the bankruptcy court has constitutional authority to enter a final order." Southeastern Materials, 467 B.R. at 348. The court has little trouble holding that Viera's equitable subordination satisfies both prongs of this test. It "satisfies the first prong of the Stern test because a claim for equitable subordination stems from Section 510(c) of the Bankruptcy Code." Id. at 361.

It satisfies the second prong of the test because it directly affects the priority in which the defendants' claims will be allowed.

Therefore, the court finds that Stern presents no obstacle to referral.

### D.     Practical Benefits of Referral

Finally, the court considers the practical benefits of referral.  The JS&N Defendants addressed many of the considerations that affect this issue in their motion to withdraw reference to the Bankruptcy Court.  ECF No. 1.  In support of that motion, the JS&N Defendants argued that if the action remained with the Bankruptcy Court, this court would be forced to review proposed findings of fact and conclusions of law because many of Viera's claims were "non-core" under § 157(b). Id. at 10–11.  Thus, the JS&N Defendants argued, it would be more efficient for the court to simply review and resolve those claims without involving the bankruptcy court.  Id.

This argument is now moot.  "Bankruptcy judges may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.'"  Stern, 564 U.S. at 474 (quoting 28 U.S.C.A. § 157(b)(1)).  Section 157(b)(2) of the Bankruptcy Code sets forth a nonexclusive list of "core proceedings."  Though Viera's equitable subordination claim may qualify as a core proceeding under multiple provisions, it is clearly a core proceeding under § 157(b)(2)(K), which lists "determinations of the validity, extent, or priority of liens" as core proceedings.  The JS&N Defendants even admit—as they must—that the equitable subordination claim is a core proceeding under § 157(b).  ECF No. 1 at 9–10 (recognizing equitable subordination claim as a core proceeding).  Thus, the only issues remaining in this action relate to a core proceeding, which the Bankruptcy Court has the statutory authority to fully resolve.

11

Because the Bankruptcy Court can fully resolve the remaining issues in this action, the court finds there is no judicial efficiency advantage to resolving this action in district court.

The court also finds that referring this action will promote the uniform administration of bankruptcy proceedings. This action now involves a single issue of bankruptcy law. The Bankruptcy Court's expertise will aid in resolving this issue. The Bankruptcy Court also has a longer, more extensive history with this bankruptcy, and is therefore better positioned to weigh the equitable considerations that affect Viera's equitable subordination claim.

Therefore, the court finds that judicial efficiency and the uniform application of the law are best served by referring this action to the Bankruptcy Court.

### III.   CONCLUSION

For the foregoing reasons, the court refers this action to the Bankruptcy Court.

**AND IT IS SO ORDERED.**

                                  **DAVID C. NORTON**
                                  **UNITED STATES DISTRICT JUDGE**

**September 21, 2016**
**Charleston, South Carolina**